PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BRUCE H. MATSON, Trustee of the
LandAmerica Financial Group,
Incorporated Liquidated Trust,

*Trustee-Appellant,*

v.

DIEGO ALARCON; EMILY E. ANDERS;
BRUCE A. AVILA; ANNELISE J.
BRADDOCK; STEVEN P. BAKER;
MICKEY J. BARKER; MICHAEL
BARLOW; DIANNE F. BIGBIE; FRANK
E. BILLINGS, JR.; RHONDA L.
BITTERMAN; JOHN C. BOMMARITO;
NANCY BOYER; KIMBERLY L.
CODAY; SHAWN D. COSMAN; NANCY
DEANGELO; BELINDA DURON;
TAMMY J. ELLEY; LAWRENCE M.
FURLONG; MICKEY GARCIA; RICHARD
GRAB; JOANNE S. GUNN; PAMALA
M. HARVEY; ELIZABETH HAYNES;
MELINDA S. HURD; JUDITH A . V.
KANE; LINDA A. KEAN; DENISE
KING; KEIKO LAM; MONIQUE
LAUFAU; LEA L. LAUTENSCHLAGER;
JOHN A. MAASS; FRANK P.
MARCARIO; KATHLEEN A.
MCADAMS; REGINA M. MORRISON;
JENNY NORTHCUTT;

No. 10-2352

GAIL M. O'HANLEY; VANAH G. RAFANELLI; KELLY S. ROBBINS; LACEY M. ROBBINS; JULIE A. ROBERTS; CHARI ROBINSON; LOREE A. RUSSO; SVEN M. RUTH; SHARON MARIE SAYRE; CHARLENE SCHUH; JENNIFER F. SIEM; J. ALAN SMELKO; MICHAEL S. SMITH; DAWN M. SMITH; JANICE SPARROW; ROBERT M. STILLWAGON; MARY TAMMINGA; JERRI THURMAN; NOEL M. TOWNES; JINXIE WEIDMARK; WENDY L. WELCH; BETTY WHELAN; ROBERT M. WILSON; ELIZABETH S. WOODROOF; PAUL YAO; EDWARD R. ZAVAL; STEPHEN D. BROOKS; DEANNA B. BRUCE; NAOMI L. CAMPANALE; MARTHA A. CARTLEDGE; THOMAS N. CATANESI; STEVEN A. COLVIN; BRIAN W. CRESS; JENNIFER L. DANSER; MELINDA CRYSTAL DAVIS; BRIAN K. DREW; GARY EVERITT; STEVEN L. FAHRENKROG, II; KIM FANUCCHI; SHARON M. FOX; KAMILA GRIGAR; EDUARDO GUEVARA; FAITH HANE; SYDNIE HARMAN; KEVIN W. HARRIS; ARLENE L. HAWLEY; WADE HERMAN; TRACEY HUNTINGTON; SARA E. JONES; MARY KENNEDY; DANA KLIMA; RICHARD T. KNAPICK; REBECCA LAWSON; STEPHANIE LAWSON; GREGORY LEE; MICHELE E. LEFEVER;

MARIVEL LEON; CHRISTOPHER
LESEURE; DAVID L. LINGERFELT;
GREGG H . C. LUM; PAMELA S.
MANNIA; PETER F. MASELLI; SARAH
A. MCBRIDE; CATHERINE JEAN
MILLS; MIKE D. MURRAY; DONNA
M. O'DELL; ALINA A. OPREA;
BEVERLEY J. PACKARD; MICHAEL
SAWCHAK; DEBORAH J. SMITH;
PAULA M. SMITH; SUZANNE M.
SMITH; NATALIE ST. CROIX;
CHRISTOPHER H. STAMEY; LINDA
TAAFFE; MARVIN CLIFTON TAYLOR;
SAMUEL E. TAYLOR; GLADYS D.
TERRIER; ROBERT L. THOMAS, JR.;
TANGALIA TIMBERLAKE; GEORGE N.
VIDACOVICH, JR.; VERNA VISCIGLIA;
SHERRI WEISS; STEPHANIE R.
WIGGINS; JOSEPH B. WYKEL; LONNIE
J. YETT; TRAVIS BARDEN; CHARLES
C. CAIN; ERIK G. IVERSON; DONALD
E. JONES, JR.; LAURA A. MUTRUX;
WENDY R. HEVENER,

*Claimants-Appellees.*

Appeal from the United States Bankruptcy Court
for the Eastern District of Virginia, at Richmond.
Kevin R. Huennekens, Bankruptcy Judge.
(3:08-bk-35994)

Argued: May 10, 2011

Decided: July 6, 2011

Before NIEMEYER, KING, and KEENAN, Circuit Judges.

---

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Judge Niemeyer and Judge King joined.

---

## COUNSEL

**ARGUED:** Christopher Lawrence Perkins, LECLAIRRYAN, PC, Richmond, Virginia, for Appellant. Joshua David McKarcher, COVINGTON & BURLING, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Christian K. Vogel, LECLAIRRYAN, PC, Richmond, Virginia, for Appellant. Michael St. Patrick Baxter, COVINGTON & BURLING, LLP, Washington, D.C., for Appellees.

---

## OPINION

KEENAN, Circuit Judge:

In this case, a trustee of a bankruptcy estate filed objections in the bankruptcy court to the requested priority treatment of a portion of severance compensation claims filed by the debtor's former employees (the claimants). The bankruptcy court overruled the trustee's objections and, under 28 U.S.C. § 158(d)(2)(A)(i), certified an appeal to this Court.

On appeal, the trustee contends that the claimants "earned" their severance compensation over the entire course of their employment. The trustee asserts that, therefore, under 11 U.S.C. § 507(a)(4), only a pro-rated portion of the claims was "earned" within 180 days preceding the bankruptcy petition and was entitled to priority treatment. We disagree with the trustee's position, and conclude that the claimants "earned"

their severance compensation on the date they became participants in the debtor's severance plan immediately after their termination from employment. Accordingly, we affirm the bankruptcy court's order.

I.

In April 2004, LandAmerica Financial Group, Inc. (LandAmerica) established a "Severance Benefits Plan" (the plan), which stated a purpose "to assist eligible Employees upon termination" of employment. The plan provided "severance benefits to eligible Employees who become Participants" in the plan. An employee qualified as a participant in the plan when the employee 1) was terminated without cause, 2) signed a severance agreement and release, and 3) certain other exempting circumstances were not present. Those circumstances included that the employee was not rehired within 30 days of termination, the employee was not offered an "equal" position with LandAmerica within a 50-mile radius, and the termination action was not due to the employee's death or resignation.

Once employees became participants in the plan, they were entitled to receive compensation equal to their weekly salary for a certain number of weeks. The number of weeks of compensation to which a participant was entitled was based on the employee's length of service to LandAmerica. For example, under the plan established in 2004, an eligible participant who worked for more than one year but less than two years would receive severance compensation equal to two weeks of pay, while an employee who worked at least eight years but less than ten years would receive severance compensation equal to six weeks of pay.

The plan also provided that a participant would receive this severance compensation either in a single sum or in monthly installments over a defined period of time. LandAmerica's board of directors (the board) retained the unilateral right to

"modify, alter, or amend the Plan, in whole or in part," or to eliminate the plan entirely. In 2008, the board slightly amended the plan by decreasing the number of weeks of salary that an eligible participant could receive based on the employee's years of service.[1]

Between August 2008 and November 2008, within the last 180 days before LandAmerica filed its bankruptcy petition, LandAmerica terminated the employment of the claimants, Diego Alarcon and 124 other employees. Based on their termination and the fact that the other conditions of the plan were satisfied, the claimants became participants in the plan. However, LandAmerica did not pay the claimants any amount of the severance compensation due.

After LandAmerica filed its bankruptcy petition on November 26, 2008, the claimants filed proofs of claims against the bankruptcy estate for the severance compensation they were due under the terms of the plan, as amended in 2008. The claimants asserted that their severance claims were entitled to priority treatment up to the statutory maximum amount provided in 11 U.S.C. § 507(a)(4).

Bruce H. Matson, Trustee of the LandAmerica Financial Group, Inc. Liquidation Trust (the trustee), did not object to the amounts of the severance claims. However, he contended that the claimants "earned" severance compensation over the entire course of their employment and that, therefore, only the portion of those claims "earned" within the 180-day period before LandAmerica filed for bankruptcy (the pre-petition period) was entitled to priority treatment under 11 U.S.C.

---

[1]The amendments to the plan in 2008 also required that an employee must work at least one year before being eligible to receive any severance pay. The plan as it existed before these amendments permitted an employee who had worked at least six months to receive severance pay. The substance of these amendments, however, does not affect the issue presented in this appeal.

§ 507(a)(4). To calculate the amount of severance compensation "earned" during the pre-petition period, the trustee proposed a formula that computed an employee's daily rate of severance compensation. The trustee provided an example of the application of his proposed formula to one of the claims at issue during a hearing held by the bankruptcy court.

In that example, the employee worked for LandAmerica for a total of 437 weeks, a period exceeding eight years, and was entitled under the plan to receive $8,500 in severance compensation. Before being terminated from employment, the employee worked 22 weeks during the pre-petition period. Because the period of 22 weeks represented 5.03% of the employee's 437 total weeks of employment, the trustee contended that the employee "earned" 5.03% of $8,500 during the pre-petition period, or $429.31. Thus, the trustee contended that only this portion of the employee's severance claim was entitled to priority treatment under 11 U.S.C. § 507(a)(4), while the remaining amount, $8,070.69, should be classified as an unsecured general claim. After the hearing, the bankruptcy court issued a memorandum opinion overruling the trustee's objections, and entered an order in favor of the claimants on this issue.

## II.

### A.

The question raised in this appeal presents an issue of law, requiring this Court to apply a de novo standard of review. *In re Bateman*, 515 F.3d 272, 277 (4th Cir. 2008).

### B.

Section 507 of the Bankruptcy Code sets forth the categories of expenses and claims that are entitled to priority treatment in the distribution of a debtor's estate. 11 U.S.C. § 507. In the enumerated list provided in the statute, a fourth priority

is given to "allowed unsecured claims, but only to the extent of $10,950 for each individual . . . *earned within 180 days* before the date of the filing of the petition. . . for (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay *earned* by an individual."[2] 11 U.S.C. § 507(a)(4) (emphasis added). Therefore, we must determine the method by which an individual "earns" "severance pay," within the meaning of this statute, to decide whether the claimants "earned" their full severance pay or only a pro-rated portion of that pay during the pre-petition period.

Under established principles of statutory interpretation, we consider the disputed statutory terms in the context in which they are employed. *United States v. Groce*, 398 F.3d 679, 681 (4th Cir. 2005). When the terms at issue are not defined in the statute, we apply their plain and ordinary meaning. *Scrimgeour v. Internal Revenue*, 149 F.3d 318, 327 (4th Cir. 1998). This plain and ordinary meaning provides the "most reliable indicator of Congressional intent." *Soliman v. Gonzales*, 419 F.3d 276, 281-82 (4th Cir. 2005).

The interpretation of the word "earned," as it appears in 11 U.S.C. § 507(a)(4), presents an issue of first impression in this Court. While the statute does not define the word "earned," we observe that to "earn" generally means to "receive as equitable return for work done or services rendered," or "to come to be duly worthy of or entitled." *Webster's Third New International Dictionary* 714 (2002). The first of these definitions plainly encompasses the common understanding of the manner in which employees "earn" wages, salaries, and commissions, the three general types of compensation listed in 11 U.S.C. § 507(a)(4)(A). Employees typically receive such compensation in exchange for their employment performance. *See*, *e.g.*, *In re Public Ledger*, 161 F.2d 762, 770 n.7 (3d Cir.

[2]Effective April 1, 2010, and applicable to cases commenced on or after that date, the statutory maximum in 11 U.S.C. § 507(a)(4) was increased to $11,725. 75 Fed. Reg. 8747-48 (Feb. 25, 2010).

1947) (wages are agreed-upon compensation received for services rendered); *In re Gurewitz*, 121 F. 982, 983 (2d Cir. 1903) (same). The triggering events permitting employees to receive wages, salaries, and commissions generally lie within the employees' control upon performance of their work, subject to the terms of the employment agreement.

The word "earned," as used in 11 U.S.C. § 507(a)(4)(A), applies not only to wages, salaries, and commissions, but also to several other types of compensation, including "severance pay." The term "severance pay" is not defined in the statute. However, that term generally is defined as "an allowance usually based on length of service that is payable to an employee" upon termination without cause. *See Webster's Third New International Dictionary* 2081 (2002). The purpose of such severance compensation is to "alleviate the consequent need for economic readjustment" and "to recompense [the employee] for certain losses attributable to the dismissal." *Straus-Duparquet, Inc. v. Local Union No. 3, Int'l B'hood of Elec. Workers*, 386 F.2d 649, 651 (2d Cir. 1967).

In contrast to wages, salaries, and commissions, the triggering events allowing employees to receive "severance pay" lie within the employer's control and its decision both to provide severance compensation and to terminate the employment relationship. Thus, employees do not "earn" "severance pay" in exchange for services rendered as they do when they "earn" wages, salaries, and commissions. Rather, employees receive "severance pay" as compensation for the injury and losses resulting from the employer's decision to terminate the employment relationship. This ordinary understanding of the term "severance pay" is consistent with the stated purpose of the plan in the present case, namely, to assist employees upon termination.

In view of the meaning and the purpose of severance compensation, we conclude that the second definition of "earn" described above, to become entitled, represents the ordinary

meaning of the manner in which employees "earn" "severance pay," within the intendment of Congress in 11 U.S.C. § 507(a)(4)(A). We therefore hold that an employee "earns" the full amount of "severance pay" on the date the employee becomes entitled to receive such compensation, subject to satisfaction of the contingencies provided in the applicable severance compensation plan.[3] *See id.* at 651 (explaining that severance pay is not earned from day to day and does not accrue over time).

In the present case, when the claimants became participants in the plan upon their termination from employment and their signing a severance agreement and release, the claimants earned severance compensation. While the amounts of the severance compensation to which the claimants were entitled under the plan were based on their length of service to LandAmerica, this method of calculation did not, as the trustee contends, dictate that those employees earned severance compensation over the entire course of their employment. The trustee's position in this regard conflicts both with the purpose of severance compensation and the plain terms of the plan at issue.

---

[3]We find no merit in the trustee's argument in favor of pro-ration based on the statute's legislative history when Congress lengthened the prepetition period from 90 days to 180 days. During that legislative process, the House of Representatives' Report explained that the effect of this change was that a "greater portion" of unpaid vacation, severance, and sick leave pay would be entitled to priority payment. H.R. Rep. No. 109-31, pt. 1 at 1401 (2005). The use of the phrase "greater portion," however, did not clearly express a legislative intent that employees "earn" "severance pay" over the entire course of their employment. *See Holland v. Big River Minerals Corp.*, 181 F.3d 597, 603 n.2 (4th Cir. 1999) (explaining that courts look beyond the plain meaning of a statute only in the rare instance in which Congress has clearly expressed a contrary legislative intent). An alternative conclusion that could be drawn from this legislative history is that Congress intended to provide employees with a greater window of eligibility for priority regarding such vacation, severance, and sick leave pay "earned" during the 180-day period.

Our conclusion is supported by the fact that the board implemented the plan and retained the right to amend the plan or to eliminate it entirely. If we were to hold that employees earned severance compensation over the entire course of their employment, an employee who began working for Land-America before the plan was established in 2004 necessarily would have earned severance compensation before Land-America had even adopted a severance benefits plan. Moreover, if the board had eliminated the plan before an employee was terminated, then, under the trustee's position, that employee would have earned severance compensation for a period of time but would never receive that compensation.

Finally, our conclusion is not altered by decisions of our sister circuits addressing the priority treatment of severance compensation in the context of administrative expense claims permitted under 11 U.S.C. § 503(b)(1)(A). Many of those courts have held that severance compensation based on length of employment has priority as an administrative expense of the bankruptcy estate only to the extent that the compensation is based on services provided to the bankruptcy estate after the debtor files for bankruptcy. *See In re Roth Am., Inc.*, 975 F.2d 949, 957 (3d Cir. 1992); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir. 1976); *In re Health Main. Found.*, 680 F.2d 619, 621 (9th Cir. 1982); *but see Straus-Duparquet*, 386 F.2d at 651.

As the bankruptcy court explained in its memorandum opinion in this case, however, 11 U.S.C. § 503(b)(1)(A), the current codification of the statute at issue in those other cases, and 11 U.S.C. § 507(a)(4), the statute at issue in this case, are materially different. Section 503(b)(1)(A) does not use the word "earned" or specifically include "severance pay" as a form of wages, salaries, and commissions. Instead, § 503(b)(1)(A) requires a calculation of the value of "services rendered" in a period of time after a debtor files its bankruptcy petition. *See In re Pittston Stevedoring Corp.*, 40 B.R. 424, 427-28 (Bankr. S.D.N.Y. 1984) (stating that "earned

within" is distinct from "service rendered within" and that "earned" "allows for some variation according to agreement between employers and employees" while "services rendered" does not). Therefore, we remain of the opinion that under 11 U.S.C. § 507(a)(4), an employee "earns" the entirety of his or her severance compensation on the date that the employee becomes entitled to receive such compensation under the applicable severance compensation plan.

### III.

Accordingly, we affirm the bankruptcy court's holding that the severance claims at issue are entitled to priority treatment under 11 U.S.C. § 507(a)(4) in amounts no greater than the maximum amount provided by statute.

*AFFIRMED*